IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HART INTERCIVIC, INC., | : |
| Plaintiff, | : |
| v. | : C.A. No. _____ |
| DEIBOLD, INCORPORATED and ELECTION SYSTEMS & SOFTWARE, INC. | : **JURY TRIAL DEMANDED** |
| Defendants. | : |

**COMPLAINT FOR PRELIMINARY AND
PERMANENT INJUNCTION AND FOR DAMAGES**

Plaintiff Hart Intercivic, Inc. ("Hart") brings this civil action against Diebold, Incorporated ("Diebold") and Election Systems & Software, Inc. ("ES&S"), and alleges as follows:

## I. JURISDICTION AND VENUE

1. This court has subject matter jurisdiction and jurisdiction over the parties pursuant to 28 U.S.C. §§ 1331 and 1337 and over the federal antitrust claims asserted herein under Section 16 of the Clayton Act, 15 U.S.C. § 26, Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 2 of the Sherman Act, 15 U.S.C. § 2.

2. Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391, in that this case involves the acquisition of the outstanding shares of capital stock of Premier Election Solutions, Inc., a Delaware domestic corporation by an acquiring party, ES&S, that is also a Delaware domestic corporation. Both defendants are found and transact business in the District of Delaware and throughout the United States.

3. Defendants are engaged in "commerce," as defined in Section 1 of the Clayton Act, 15 U.S.C. § 12(a). Defendant's conduct has and will have a substantial, direct, and reasonably foreseeable effect on interstate commerce.

## II. THE PLAINTIFF

4. Plaintiff, Hart, is a for-profit corporation organized, existing, and doing business under the laws of the State of Texas, organized on June 13, 1986, having its principal offices at 15500 Wells Port Drive, Austin, Texas 78728. The founders of Hart have been printing election ballots, and serving the voting machine and election systems market, since 1912. Hart presently serves approximately 10% of the approximately 180,000 voting precincts in the United States. Hart's two principal competitors are the defendants in this case, which are the ultimate parent entities responsible for the stock and/or asset transaction that is the subject of this case.

## III. THE ULTIMATE PARENT ENTITIES

5. Defendant, Diebold, is a corporation existing, and doing business under the laws of the State of Ohio organized on August 11, 1876 having its principal place of business at 5995 Mayfair Road, North Canton, Ohio 44720. Diebold is a diversified manufacturing company specializing in ATM's and other banking equipment.

6. Diebold is the ultimate parent entity of Diebold Election Systems Holding Company, Inc., a Delaware general corporation organized on June 24, 2002.

7. Diebold is also the ultimate parent entity of Global Election Systems, Inc. ("GES"), a Delaware general corporation organized on December 6, 1991. GES changed its name on March 18, 2002 to Diebold Election Systems, Inc. ("DES"). DES changed its name on September 12, 2007 to Premier Election Solutions, Inc. ("PES"). Diebold is the ultimate parent entity of PES by virtue of its acquisition of GES in 2002. PES presently serves approximately 23% of the voting precincts in the United States.

2

8. Diebold is also the ultimate parent entity of Data Information Management Systems, Inc., ("DIMS"), a California corporation organized on February 9, 1981, by virtue of having acquired its capital stock and/or assets on January 23, 2003.

9. Defendant, ES&S, is a corporation existing, and doing business under the laws of the State of Delaware organized on April 25, 1988, with its principal place of business at 11208 John Galt Blvd., Omaha, Nebraska 68137. ES&S is the successor to the entity resulting from the 1997 merger of American Information Systems, Inc. and the elections division of Business Records Corporation. ES&S serves approximately 45% of the voting precincts in the United States.

10. Sequoia Voting Systems is a vendor of voting machines and election systems that serves approximately 18% of the voting precincts in the United States.

11. Dominion Voting Systems, Inc. is a vendor of voting machines and election systems that serves approximately 5% of the voting precincts in the United States.

### IV. THE SEPTEMBER 2 ACQUISITION

12. On September 2, 2009 Diebold and ES&S agreed and consummated a transaction in which ES&S would acquire from Diebold all the outstanding capital stock of PES and DIMS.

### V. NATURE OF THIS ACTION

13. Plaintiff brings Count I of this action against defendants pursuant to Section 16 of the Clayton Act, as amended, 15 U.S.C. § 26, a preliminary and permanent injunction and other equitable relief to enjoin and prevent defendants from violating Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18 and brings Count II of this action against defendant, ES&S, pursuant to Section 4 of the Clayton Act, as amended, 15 U.S.C. § 15, for damages caused by ES&S' violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

14. If the September 2 acquisition is permitted to stand, the prices of voting machine equipment and services are likely to increase, the choice and quality of products and services available to election officials in the United States is likely to decrease, innovation in voting systems and the introduction of new products is likely to suffer, and rival manufacturers are likely to exit the voting machine market. As a result, consumers of voting systems and services and smaller suppliers to the market, such as plaintiff, will be harmed. The transaction therefore violates Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18. As a result of having consummated the September 2 acquisition, ES&S has monopolized the market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

15. Plaintiff, Hart, seeks an order declaring the transaction unlawful and requiring ES&S to divest its interests in Premier and DIMS and other equitable relief because the transaction significantly increases ES&S's share of the highly concentrated market for voting machines and election systems, substantially lessening competition and tending to create a monopoly in that market. Hart seeks damages from ES&S for its monopolization of the market.

## VI.  TRADE AND COMMERCE

### A.  The Relevant Market

16. States, counties and municipalities conduct elections. Within each of these jurisdictions, voting activity is conducted at polling sites which are comprised of voting precincts. There are approximately 180,000 voting precincts in the United States. Election technology products and related services are provided to each of these voting precincts. Services to maintain and manage the election systems are provided by the equipment vendor. The sale and servicing of voting machines and election systems constitutes a relevant product market and a line of commerce within the meaning of Section 7 of the Clayton Act.

17. The relevant geographic market is the United States within the meaning of Section 7 of the Clayton Act.

**B.  Market Concentration**

18. The U.S. market for voting machines and service is highly concentrated. ES&S and Premier compete against only three other firms in the manufacture and service of voting machines. Prior to September 2, 2009, ES&S served approximately 45.5% of all U.S. election precincts and Premier/DIMS served approximately 23% of all U.S. election precincts. As a result of the September 2 acquisition, ES&S will serve 68.5% of all U.S. election precincts and the number of independent competitors will be reduced from five to four.

19. Using the Herfindahl-Hirschman Index ("HHI") as a measure of market concentration, the proposed transaction will increase the HHI in voting equipment and service from 3,002 points to a post-acquisition level 5,072 points, or an increase of 2,070 points. Under the Department of Justice and Federal Trade Commission 1992 Horizontal Merger Guidelines (rev. 1997, § 1.51), markets with an HHI above 1,800 are considered highly concentrated, and "[w]here the post-merger HHI exceeds 1,800, it will be presumed [by the agencies] that mergers producing an increase in the HHI of more than 100 points are likely to create or enhance market power or facilitate its exercise." Starting from a pre-acquisition position of 3,002 (nearly twice the level indicative to the DOJ and FTC of an already highly concentrated market), the September 2 acquisition by ES&S will result in an increase of more than <u>20 times</u> the magnitude that raises a presumption that competition substantially will be lessened.

## VII.   ANTICOMPETIVE EFFECTS

20.   The effect of the September 2 acquisition will be to substantially lessen competition and tend to create a monopoly in interstate trade and commerce in violation of Section 7 of the Clayton Act.

21.   Unless restrained, the transaction likely will have the following effects:

   a.   actual competition between ES&S and Premier/DIMS will be eliminated;

   b.   competition generally in the manufacture and service of voting machines will be substantially lessened;

   c.   prices for voting machines and services will increase;

   d.   the quality and choice of products and services available for installation in the various precincts will decrease;

   e.   innovation in new products and services will suffer; and

   f.   the remaining competitors are likely to be foreclosed from large segments of the market and are likely to exit the market.

22.   New entry is not likely to thwart these anticompetitive effects. Election technology products and related services are subject to testing and certification requirements as overseen by the U.S. Election Assistance Commission and by individual States. Testing and certification is difficult, costly and time consuming, requiring several years of product development and testing before the products may be submitted to a lengthy certification process. Moreover, incumbency is a significant barrier to consumer choice due to long expected product life (more than 10 years, in many cases), high sunk costs and the technical impracticality of mixing systems from different vendors within a single jurisdiction. As a result, purchasers face very high switching costs, making incumbency the most significant determinant of market share.

New entrants are not likely to perceive that this market offers any reasonable business opportunities, particularly when facing a dominant firm incumbent in nearly 70% of U.S. precincts.

## COUNT I

23. The September 2 acquisition will injure and harm both consumers and plaintiff, in that the acquisition will undermine plaintiff's ability to retain its present customers and foreclose it from opportunities to obtain additional customers.

24. Unless restrained and reversed, the acquisition of PES and DIMS by ES&S constitutes a violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## COUNT II

25. The September 2 acquisition constitutes monopolization of the voting machines and election systems market by ES&S.

## REQUESTED RELIEF

WHEREFORE, plaintiffs seek the following relief:

A. A declaration that the September 2 acquisition violates Section 7 of the Clayton Act, 15 U.S.C. § 18;

B. An order enjoining defendant from proceeding to integrate the acquired companies into its existing operations and requiring defendants to hold the assets acquired in the transaction separate during the pendency of this litigation;

C. An order requiring ES&S to divest its interests in the acquired companies and/or assets or for a novation of the September 2 acquisition;

D. An order awarding damages caused by ES&S' monopolization of the relevant market, and trial by jury of the issues related thereto;

E.  An order awarding a reasonable attorneys' fee and the costs of this suit; and,

F.  Such other further and permanent equitable relief as may be reasonably likely to cure the harm to competition caused by the unlawful acquisition.

PROCTOR HEYMAN LLP

/s/ Kurt M. Heyman
Kurt M. Heyman (# 3054)
E-mail: kheyman@proctorheyman.com
Patricia L. Enerio (# 3728)
E-mail: penerio@proctorheyman.com
1116 N. West Street
Wilmington, DE 19801
(302) 472-7300
Attorneys for Plaintiffs

OF COUNSEL:

PATTON BOGGS, LLP
Jonathan L. Rubin
2550 M Street, NW
Washington, DC 20037
(202) 457-6531

Dated: September 11, 2009

8